UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHERRY BREWER,                          )
                                        )
            Plaintiff(s),               )
                                        )
      vs.                               )        Case No. 4:09CV1356 JCH
                                        )
RELIANCE STANDARD LIFE INSURANCE        )
COMPANY,                                )
                                        )
            Defendant(s).               )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Reliance Standard Life Insurance Company's

Motion for Summary Judgment, and Plaintiff Sherry Brewer's Motion for Summary Judgment, both

filed April 12, 2010. (Doc. Nos. 10, 14). The motions are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Sherry Brewer was employed by Captain D's, Inc., as an Area Director. (Complaint

("Compl."), ¶ 4). At all times relevant hereto, Plaintiff participated in a Group Benefits Plan obtained

through her employer, and provided by Defendant. (Id., ¶¶ 1, 2).[1] On or about November 23, 2005,

Plaintiff left her employment with Captain D's as a result of injuries she sustained in a November 23,

2005, motor vehicle accident. (Id., ¶ 4 and Defendant's Answer thereto).

The Plan provided in relevant part as follows:

**INSURING CLAUSE:** We will pay a Monthly Benefit if an Insured:

(1)      is Totally Disabled as the result of a Sickness or Injury covered by this Policy;

---

[1] The Plan is an employee welfare benefit plan, governed by the Employee Retirement Income
Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 et seq. (Statement of
Uncontroverted Material Facts of Defendant Reliance Standard Life Insurance Company
("Defendant's Facts"), ¶¶ 1, 2).

(2)     is under the regular care of a Physician;
(3)     has completed the Elimination Period; and
(4)     submits satisfactory proof of Total Disability to us.

CLASS 1: "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

(1)     during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;

    (a)     "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

    (b)     "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

(2)     after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

**MENTAL OR NERVOUS DISORDERS:**  Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period....

Mental or Nervous Disorders are defined to include disorders which are diagnosed to include a condition such as:

(1)     bipolar disorder (manic depressive syndrome);
(2)     schizophrenia;
(3)     delusional (paranoid) disorders;
(4)     psychotic disorders;
(5)     depressive disorders;
(6)     anxiety disorders;
(7)     somatoform disorders (psychosomatic illness);
(8)     eating disorders; or
(9)     mental illness.

**PAYMENT OF CLAIMS:** When we receive written proof of Total Disability covered by this Policy, we will pay any benefits due....

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(Administrative Record, attached to Defendant's Motion for Summary Judgment ("AR"), 18, 10, 21, 14).

As stated above, Plaintiff sustained injuries in a car accident on November 23, 2005. (Defendant's Facts, ¶ 15, citing AR 1075). In 2006, Plaintiff submitted a claim for long-term disability benefits under the Plan. (Id., ¶ 14, citing AR 1075-76). Included with the claim was an Attending Physician's Statement, completed by David E. Karges, M.D., Plaintiff's orthopedic physician, on January 27, 2006. (Id., ¶ 16, citing AR 1057-58). In his statement, Dr. Karges noted Plaintiff's primary diagnoses were left femur fracture, right dislocated hip, left navicular fracture, left inferior ramus fracture, right fifth metatarsal fracture, and right femoral head fracture. (AR 1057). Dr. Karges indicated Plaintiff's symptoms were pain, and an inability to bear weight. (Id.). Dr. Karges further noted Plaintiff underwent several surgeries after her accident. (AR 1059-1064).

In a letter dated March 3, 2006, Defendant approved Plaintiff's claim for Long Term Disability ("LTD") Benefits, retroactive to February 20, 2006. (AR 1036-37).[2] The letter advised Plaintiff it may be in her best interest to apply for Social Security Disability ("SSD") benefits as well. (Id.). Defendant's letter further stated as follows:

Your group policy further provides that in order to be eligible for Long Term Disability Benefits beyond 24 months, you must be totally disabled from performing the material duties of Any Occupation....If you continue to meet your group policy's

---

[2] According to Defendant, Plaintiff's benefits commenced after an Elimination Period of 90 days, and were payable monthly in arrears. (AR 1036).

definition of Total Disability, you will reach the 24th month on February 20, 2008. An investigation will begin prior to this date in order to gather the necessary information to determine your continued eligibility for LTD benefits.

(AR 1037).

Plaintiff continued to be treated by Dr. Karges during the time she received benefits. (Defendant's Facts, ¶ 22, citing AR 399, 449, 613, 771, 872). Plaintiff also was treated for anxiety by Kevin J. Sides, M.D., her primary care physician. (Id., ¶ 23, citing AR 588). In June of 2006, Dr. Karges recommended that Plaintiff begin physical therapy. (Id., ¶ 25, citing AR 872). In July, 2007, Dr. Karges submitted another Attending Physician's Statement, in which he indicated Plaintiff would be continuously totally disabled until June, 2008, and partially disabled permanently. (AR 710).

On or about August 23, 2007, at Defendant's request, Plaintiff submitted a Daily Living Questionnaire. (AR 691, 699-705). Plaintiff indicated she had pain in her left foot, left upper leg and right hip, and that she suffered from anxiety and depression. (AR 699). In describing her sleeping habits, Plaintiff stated she had "nightmares about the accident, difficulty sleeping due to pain." (AR 700). She further noted that changes in her routine caused anxiety attacks. (Id.). Plaintiff noted that she was driving two to three times per week, and was capable of traveling sixty miles as either a driver or a passenger. (AR 701). Plaintiff also stated that she did dishes on a daily basis, and laundry twice a week. (AR 702). While she went food shopping twice a week, Plaintiff stated she required assistance to carry anything heavier than a twelve-pack of soda. (Id.). Plaintiff indicated that she visited with friends or relatives twice a week, for approximately thirty minutes. (AR 703). Finally, when asked whether she believed she would be able to return to work, Plaintiff answered "no," without explanation. (AR 704).

On or about October 1, 2007, at the request of Defendant, Dr. Karges completed a Physical Capabilities Questionnaire. (AR 658-659). Dr. Karges stated that during an eight-hour work day,

Plaintiff could sit continuously, and stand, walk, bend at the waist, squat at the knees, climb stairs, kneel, and crawl occasionally. (AR 658).[3] Dr. Karges further indicated Plaintiff could use her right and left upper extremities for continuous simple grasping, reaching above mid chest, reaching at waist/desk level, and fine manipulation. (AR 659). Dr. Karges indicated Plaintiff's left lower extremity was non-weight bearing, and stated he was unable to determine the exertion level at which Plaintiff could work at that time. (AR 658-659).[4] Just one week later, however, on October 8, 2007, Dr. Karges stated that Plaintiff was now able to drive and, subject to limitations, she was to have sedentary work at that time. (AR 398).

On October 3, 2007, Dr. Sides noted in relevant part as follows:

I do see her for her generalized anxiety and post traumatic anxiety. She is improved, but she still is on medication. She has decreased her Xanax a lot over the last six months, but continues to take it about three times a day, on Celexa 20 mg once a day. Much less anxious, she has not had a panic attack in a while. Is driving a little bit more, but still anxious about driving at night. Do not feel at this time that she is probably ready to go back to work from an anxiety standpoint.

(AR 588). Dr. Sides submitted a letter to Defendant that same day, stating in relevant part as follows:

I do not feel that she is ready to return to work at this time from her anxiety and depression standpoint and feel that she probably needs a little bit more time for those symptoms to improve. I have recommended from an anxiety standpoint, that she is not ready to return to work at this time.

(AR 687).

On December 28, 2007, Dr. Karges entered the following office visit note:

The patient is a 45-year old female who is in today for follow up of a talonavicular and midfoot fusion. The patient is doing quite well. She is weight bearing as

---

[3] Contrary to Plaintiff's own assessment, Dr. Karges indicated Plaintiff was unable to use foot controls or drive. (AR 658).

[4] Dr. Karges submitted a nearly identical Physical Capabilities Questionnaire on February 25, 2008. (AR 446-447). The only change was that he no longer stated Plaintiff was non-weight bearing in her lower left extremity.

tolerated on her left lower extremity. However, at this point she is wearing an ankle brace. Patient states that she is doing quite well ambulating in this brace with no problems with pain or stability.

(AR 449). On February 11, 2008, Dr. Karges entered the following office visit note:

The patient is a 45-year old female who is 5 months status post medial column fusion of her left midfoot status post traumatic injury.

She presents today doing relatively well. She is using Darvocet and Neurontin. She has bought some new shoes and is avidly walking; however, she is complaining of symptomatic hardware. Most notably, the transverse screws are bothering her with wearing her new shoes.

(AR 328). On June 27, 2008, Dr. Karges entered the following office visit note:

The patient sustained multiple injuries to the lower extremity. She had a left midfoot injury that was treated surgically initially with fixation and she continued to develop post-traumatic sub talonavicular arthrosis. She therefore then underwent a fusion and currently has her hardware removed. She has definitely improved her situation well. However, she still has some daily aches and pains.

X-RAYS: X-rays today taken today show that she is well-healed. She is in good position.

(AR 327).

On or about May 23, 2008, Defendant obtained an investigation report through Research Consultants Group, Inc. (AR 436-440). Research Consultants Group summarized its findings in relevant part as follows:

We were able to confirm that the claimant does work part-time at her father's business, conducting office work....We also determined the claimant's father is planning to retire and the claimant will not be taking over the family business. We determined that the claimant is still believed to go boating with her family and is known to fish while on the lake or river. We determined the claimant purchased a fishing license in 2007 and hunting and fishing license in 2006. She did not purchase licenses in 2005 or in 2008. Neighbors we spoke with were not aware of the claimant's disability; however, were familiar with her automobile accident and the fact that she is not currently working. Neighbors have observed the claimant outside on her property, as well as operating a motor vehicle....

Our investigation revealed the claimant is active....

(AR 436-437). On or about April 4, 2008, Defendant obtained a hypothetical residual employability analysis, to determine Plaintiff's employability in any occupation. (Defendant's Facts, ¶ 50, citing AR 477-480). The analyst stated as follows: "*It appears that claimant may have sedentary work function in the near future*." (AR 477). She continued: "If Ms. Brewer were able to perform sedentary work in the future, the following would be a representative list of occupational alternatives in light of her educational background and in consideration of her vocational history: Manager, Department, Employment Interviewer, Supervisor, Customer Complaint Service, Customer Service Representative Supervisor, Director, Service." (AR 478).

On or about February 12, 2008, the Social Security Administration ("SSA") determined that Plaintiff was entitled to Disability Insurance Benefits under the Social Security Act. (AR 552-556). Specifically, the Administrative Law Judge ("ALJ") found as follows:

> 3.     The claimant has the following severe impairment(s): residuals of multiple bone fractures, depression, and anxiety (20 CFR 404.1520(c)).
>
> The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and one to two episodes of decompensation....
>
> 5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, except that she is unable to climb stairs and is limited to standing and walking for no longer than 15 to 20 minutes at a time, or longer than two hours total in an eight-hour workday. She is unable to maintain attention and concentration for extended periods of time due to depression and anxiety, and is unable to tolerate the normal stresses and pressures of routine work activity.

(AR 554). The ALJ then concluded that considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that exist in significant numbers in the national

economy that Plaintiff could perform. (AR 555).[5] The ALJ did note that because medical improvement was expected with continued appropriate treatment, a continuing disability review was recommended in twelve months. (AR 556). In March, 2008, Plaintiff received an award of benefits retroactive to May, 2006. (AR 378-383).[6]

In a letter dated November 12, 2008, Defendant informed Plaintiff that her LTD benefits were being discontinued, as follows:

> During the first 24 months that LTD benefits are payable, you need only be disabled from performing the material duties of your *regular occupation*. After this period, however, the policy requires that you be unable to perform the material duties of *any occupation* (as described above). As LTD benefits first became payable on February 20, 2006, this change in definition of *Total Disability* has occurred on February 20, 2008.

> To determine whether you continue to satisfy the definition of *Total Disability* after this change, we have reviewed all of the information in your claim file, including (but not limited to) the information provided by Dr. Karges. Based on this information we were able to determine that you are capable of *sedentary* work activity.

> The medical information in your claim file states that you sustained a motor vehicle accident in November 23, 2005 and sustained multiple traumatic injuries.

> The medical record dated June 27, 2008 from Dr. Karges reports that your fusion hardware was removed from your left foot. The record further states that the area is well healed and much improved except for some daily aches and pains.

> In the note dated February 11, 2008, even before the hardware removal, Dr. Karges reported that you were avidly walking with symptomatic hardware.

---

[5] Defendant maintains the SSA based its decision in large part on Plaintiff's mental health condition, for which benefits are limited to 24 months under Defendant's policy. (Defendant's Response to Plaintiff's Statement of Undisputed Facts, ¶ 12).

[6] Plaintiff subsequently refunded $30,934.22 in disability payments she received from the SSA to Defendant. (Plaintiff's Statement of Undisputed Facts ("Plaintiff's Facts"), ¶¶ 14, 15, citing AR 389, 390, 412-414).

Our medical department reviewed the information provided by Dr. Karges. The medical department concluded that the recent records provided by Dr. Karges support sedentary restrictions and limitations.

In addition, our vocational staff also reviewed all of the information in your claim file. Based on the available medical information as well as information about your training, education and experience, we have determined that you can perform, and would qualify for the following occupations: department manager, employment interviewer, customer service complaint supervisor or a customer service representative supervisor. Please note that our vocational staff was also able to identify other occupations in addition to those mentioned above.

As a result, we have determined that you no longer satisfy the definition of *Total Disability* (above) beyond February 20, 2008 and your claim will be closed.

(AR 385-386).

On or about December 19, 2008, Plaintiff filed a written notice of appeal. (Defendant's Facts, ¶ 53, citing AR 377). Defendant then obtained the opinion of Michael D. Leibowitz, a medical doctor Board Certified in Physical Medicine and Rehabilitation. (Id., ¶ 54, citing AR 305-310). After reviewing the documents in Plaintiff's claim file[7], Dr. Leibowitz provided the following assessment on March 6, 2009, based upon a reasonable degree of medical certainty:

As of 2/20/08, the following restrictions and limitations (based on review of the medical record documents as noted above) are: the claimant may work at a sedentary lift exertional level on a full-time basis exerting up to 10 pounds of force occasionally (0-33% of the time) and/or a negligible amount of force frequently (34-66% of the time) and the claimant may stand and walk occasionally (0-33% of the time) and may sit continuously (67-100% of the time). The duration of the above-noted restrictions and limitations starting on 2/20/08 would be for 24 months thereafter.

(AR 310). Based on the capabilities reflected in Dr. Leibowitz's report, Defendant referred Plaintiff's file back to its Vocational Rehabilitation Department, which determined that the sedentary occupations listed in the April 4, 2008, Residual Employability Analysis remained viable alternatives

---

[7] Defendant did not request a physical medical examination of Plaintiff, despite its right to do so under its policy. (Plaintiff's Facts, ¶ 19, citing AR 14).

for Plaintiff. (Defendant's Facts, ¶ 57, citing AR 312). Thereafter, Defendant denied Plaintiff's

appeal regarding her alleged physical disability on April 3, 2009, as follows:

> It is noteworthy that while Dr. Karges documented on the Physical Capacities Questionnaire on 2/25/08 that he was "unable to determine @ this time" as to when his patient could return to work, actual restrictions and limitations documented on the Questionnaire by Dr. Karges, following his evaluation of his patient on 2/11/08, would not preclude your client from performing the material duties of sedentary work, except for the fact that he left the "Lifting" category blank. Also on 2/11/08 in spite of Ms. Brewer report of some complaints of symptomatic hardware, she also reported that she was "avidly walking". On her next appointment on 6/27/08 Dr. Karges discusses his patient's surgical history, and notes that x-rays indicated that she was well healed and in good position, and states, in part, "She has definitely improved her situation well. However, she still has some daily aches and pains"....

> In considering the restrictions and limitations provided by Dr. Leibowitz, we asked that a staff Vocational Specialist re-visit the prior Residual Employability Analysis (REA) to determine if the alternative occupations previously identified remained viable. The staff Vocational Specialist has concluded that the sedentary occupations that were previously identified remained viable alternatives for Ms. Brewer. Given a sedentary work capacity as concluded in this review (see below discussion) the following is a list of some of the sedentary occupational alternatives in light of Ms. Brewer's educational background and in consideration of her vocational history, to name a few: Manager, Department (DOT, 189.167-022, sedentary), Employment Interviewer (DOT, 166.267-010, sedentary), Supervisor, and Customer Complaint Service (DOT 241.137-014, sedentary). The physical demands of a sedentary level occupation may require the ability to lift, carry, push/pull 10 pounds occasionally. A sedentary occupation involves mostly sitting, but may involve standing or walking for brief periods of time....

> In conclusion, based on the outcome of our review we agree with the Claim Department's decision to terminate your client's LTD benefits effective 2/20/08, the end of the 24 month "Total Disability" regular occupation period. We have not suggested that your client possesses the ability to perform the material duties of her regular Light exertion occupation[8] but by 2/20/08 she had already received from RSLI monthly LTD benefits for a period of 24 months for a "Total Disability" (actually received benefits to June 2008 while the determination was pending, and thus her claim is overpaid) from her regular occupation. Again, the purpose of this review was to determine if your client's claimed inability to perform the Full-time material duties

---

[8] Plaintiff's former job was represented by two positions in the Dictionary of Occupational Titles: Manager, Branch Operation Evaluation, DOR 187.167-062, and Area Supervisor, Retail Chain Store, DOR 185.177-014, both performed at the light exertion work capacity. (Plaintiff's Facts, ¶ 4, citing AR 295).

of any occupation was medically and vocationally supported. Following your client's surgical fusion revision in September, medical records document a definite improvement in your client's status. We understand that your client will continue to experience symptoms associated with her medical conditions, as documented in her medical records, and that her conditions will likely require ongoing medical treatment. However, when we consider the medical records in their totality they simply do not support your client's claimed level of impairment, by 2/20/08. As discussed in the body of this letter, Dr. Leibowitz has opined restrictions and limitations, that, when reviewed by our staff Vocational Specialist would not preclude your client from performing the material duties of the alternative sedentary occupations, as noted above. We agree with Dr. Leibowitz's assessment of your client's status, and find that your client is ineligible for LTD benefits beyond 2/20/08, as by that date she was no longer "Totally Disabled" as defined in the group Policy. Consequently, your request protesting the termination benefits on her behalf is denied....

While information in the claim file documents your client's complaints of some back pain in August 2008, and some arm tingling in January 2009, medical records do not suggest impairment for either of these conditions at or around 2/20/08, the date that we have determined that "Total Disability" was no longer supported. We did not deem it necessary to determine if these conditions/symptoms would preclude your client's work function, at the time that she reported them, as by 2/20/08 when we determined that she was no longer "Totally Disabled", your client was no longer eligible for LTD *coverage* in accordance with the above TERMINATION OF INDIVIDUAL INSURANCE Policy provision, as she was no longer a "Full-time" employee and ceased to be a member of an "Eligible Class"....Any claim for a physical impairment which began after 2/20/08, would not be covered or compensable under the terms of the group Policy, as your client never rejoined a Class of employees eligible for coverage.

(AR 297, 300, 302). With respect to any possible claim for mental health benefits, Defendant stated

as follows:

**MENTAL OR NERVOUS DISORDERS:** Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period. The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits.

While it is really unclear from a review of your client's actual medical records if she is claiming ongoing work impairment in connection with her mental health symptoms, as medical records by mid 2008 suggest an improvement in her status (going out more often, did not want to remain in bed, etc), information in the claim file documents mental health symptoms associated with your client's traumatic accident since the onset of her claim, and the maximum duration of 24-months for a mental health "Total

Disability" would have run concurrently with the 24-month regular occupation period of "Total Disability". Thus, Ms. Brewer has already received the group Policy maximum duration of benefits for a mental health condition.

(AR 300-301). Finally, with respect to Plaintiff's award of Social Security disability benefits,

Defendant stated as follows:

Finally, in your request for an appeal on Ms. Brewer's behalf, you enclosed a copy of her favorable Social Security award, and state, in part, "It appears that your medical review has misinterpreted the medical records furnished. It is our intention to file suit on this matter if adverse benefit decision is not reversed".

In response, we realize that sometime ago during the course of your client's claim, RSLI advised her of the benefits of applying for SSDI and had suggested that it may be in her best interest to apply. This suggestion was made after a review of your client's file by a Social Security Analyst in our office who felt that information in Ms. Brewer's claim file *at that time* suggested that her condition might qualify her to receive SSDI benefits. However, new information has been obtained by RSLI (updated medical records, independent physician review, etc.,) that has led us to conclude your client is no longer eligible to receive LTD benefits under our Policy....

While we consider Social Security and other insurers' determinations, they are not binding on RSLI's decision as to whether or not your client meets the definition of "Total Disability", as set forth in the group Policy. A person's entitlement to each of these benefits may be based upon a different set of guidelines, which may sometimes lead to differing conclusions. In addition, each benefit provider may also be considering different medical evidence in the evaluation of a claim. For example, in your client's situation, the Social Security Administration ("SSA") did not have the report from the independent physician, Dr. Leibowitz who reviewed information in the claim file and opined that your client possessed sedentary restrictions and limitations, or other medical and vocational information RSLI may have developed in your client's file. We also note in reviewing the ALJ analysis that it appears that there were no State independent physician opinions solicited as part of their analysis. If the SSA were to review Dr. Leibowitz's report along with the other medical information obtained by us, they may reach a similar conclusion. In any event, the receipt of SSDI benefits does not guarantee the receipt of LTD benefits or vice versa.

The ALJ stated, in part, "She is unable to maintain attention and concentration for extended period of time due to depression and anxiety, and is unable to tolerate the normal stresses and pressures of routine work activity". It would appear that your client's mental health status, while not the sole consideration, weighed greatly in the decision rendered by the Social Security Administration however, as discussed in the body of our letter, your client has already received the maximum duration of 24-months of benefits for a mental health "Total Disability", under the terms and provisions of the RSLI group LTD Policy.

(AR 302-303).

Plaintiff filed the instant Complaint on August 25, 2009, claiming that by wrongfully refusing to pay Plaintiff benefits under the Plan, Defendant violated ERISA and the underlying provisions of the Plan. (Compl., ¶ 11). As stated above, Plaintiff and Defendant filed competing Motions for Summary Judgment on April 12, 2010. (Doc. Nos. 10, 14).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson,

477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

**DISCUSSION**

The Eighth Circuit has held that, "[u]nder ERISA, a plan participant may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" Pralutsky v. Metropolitan Life Ins. Co., 435 F.3d 833, 837 (8th Cir.), quoting 29 U.S.C. § 1132(a)(1)(B), cert. denied, 549 U.S. 887 (2006). "The district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion." Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original) (citation omitted).

In the instant case, because as noted above the Plan allotted Defendant the discretionary authority to determine eligibility for benefits, the standard of review for this Court is abuse of discretion.

> Under the abuse of discretion standard, the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence. In considering the reasonableness of a plan administrator's fact-based disability determination, courts should consider whether the decision is supported by substantial evidence. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotations and citations omitted). "If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made." Downey v. Hartford Life Group Ins. Co., 2010 WL 1487227 at *4 (W.D. Mo. Feb. 16, 2010) (internal quotations and citation omitted). See also Wilcox v. Group Health Plan, Inc., 2009 WL 910695 at *8 (E.D. Mo. Mar. 31, 2009) (under

the abuse of discretion standard, the court will reverse the plan administrator's decision only if it was arbitrary and capricious).

## A.    Conflict Of Interest

The Supreme Court recently held that a plan administrator which both evaluates claims for benefits and pays benefit claims (as Defendant does here) operates under a conflict of interest. Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2348-49 (2008). "When a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Downey, 2010 WL 1487227 at *4 (internal quotations and citation omitted).

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.

Wakkinen v. UNUM Life Ins. Co. of America, 531 F.3d 575, 581-82 (8th Cir. 2008) (internal quotations and citations omitted).

In the instant case, as evidence of Defendant's allegedly biased claims administration process Plaintiff asserts that Dr. Leibowitz was retained directly by Defendant on twelve occasions in the last ten years, and may have been retained by an outside vendor to provide opinions in connection with Defendant's claims on an unspecified number of other occasions.  (Doc. No. 28, P. 3).[9]  Plaintiff offers no evidence as to Dr. Leibowitz's findings and/or recommendations in any cases other than the one at bar, however, nor does she offer evidence that Defendant itself "has repeatedly denied benefits

---

[9] Plaintiff purports to cite to Defendant's Amended Answers to Interrogatories as proof of this assertion, but failed to attach a copy of said Amended Answers to its filing.

to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 968-69 (9th Cir. 2006).[10]  In light of these circumstances, the Court acknowledges the existence of a technical conflict of interest but, taking into account the remaining factors discussed below, finds an insufficiently close balance for the conflict of interest to act as a tiebreaker in favor of finding that Defendant abused its discretion.  Wakkinen, 531 F.3d at 582; Downey, 2010 WL 1487227 at *5.

B.     **Total Disability**

Upon consideration of the record before it, the Court cannot say the Plan Administrator abused its discretion in denying Plaintiff long-term disability benefits, for several reasons.  First, as noted above the Plan defines the term "Total Disability" as follows:   "'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness,....after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation.  Any occupation is one that the Insured's education, training or experience will reasonably allow.  We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis."  (AR 10).

With respect to Plaintiff's physical capabilities, it is undisputed that at the time it rendered its decision, Defendant had before it the following evidence:  First, even before the end of the initial twenty-four month period, Plaintiff's treating physician Dr. Karges completed a Physical Capabilities Questionnaire stating that during an eight-hour work day, Plaintiff could sit continuously, and stand, walk, bend at the waist, squat at the knees, climb stairs, kneel, and crawl occasionally.  (AR 658-

---

[10] Plaintiff makes vague allegations that her attempt to establish a bias in the claims administration process was hindered by the inadequacy of Defendant's August 18, 2010, amended responses to her interrogatories and requests for production.  (Doc. No. 28, PP. 2-4).  Plaintiff did not file a motion to compel with respect to Defendant's submission, however, and so the issue of the adequacy of Defendant's responses is not before the Court.

659). Dr. Karges further stated in office visit notes that Plaintiff was to have sedentary work as of October, 2007, that she was "doing quite well" as of December, 2007, and that she was doing "relatively well" and "avidly walking" as of February, 2008. (AR 398, 449, 328).

Subsequent to the initial twenty-four month period, Defendant was in possession of Dr. Karges' June 27, 2008, office note, in which he opined that Plaintiff had "improved her situation well," and was "well-healed" and "in good position." (AR 327). Defendant further possessed Research Consultants Group's May, 2008, investigation report, which indicated that Plaintiff was working part-time, fishing, boating and driving. (AR 436-440). Finally, the Plan Administrator had a separate opinion in which an independent physician, Dr. Michael D. Leibowitz, concluded that as of February 20, 2008, Plaintiff was able to work at a sedentary lift exertional level on a full-time basis, exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently, standing and walking occasionally, and sitting continuously. (AR 305-310).[11]  In light of the foregoing, the Court finds the Plan Administrator's decision to deny Plaintiff benefits based on her physical limitations was not arbitrary and capricious. See Rittenhouse, 476 F.3d at 632 (internal quotations and citation omitted) ("[The Plan's] decision is supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion");

---

[11] It is unclear to the Court whether there exists a conflict of opinion between Plaintiff's treating physician, Dr. Kargas, and the Plan Administrator's reviewing physician, Dr. Leibowitz. In other words, although Dr. Karges stated he was unable to determine the exertion level at which Plaintiff could work in either October, 2007, or February, 2008, he acknowledged Plaintiff could, among others things, sit continuously and stand occasionally, as well as use her upper extremities for various activities. (See AR 658-659, 446-447). These capabilities presumably would permit Plaintiff to perform the functions of several sedentary work positions identified by Defendant. In any event, "[w]hen there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." Johnson v. Metropolitan Life Ins. Co., 437 F.3d 809, 814 (8th Cir. 2006) (citation omitted). See also Midgett v. Washington Group Intern. Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009) ("The Supreme Court has recognized that treating physicians are not automatically entitled to special weight in disability determinations under ERISA.").

Wakkinen, 531 F.3d at 584 ("Although [Defendant] was operating under a conflict of interest when it denied [Plaintiff's] claim, the remaining facts in the case indicate that it did not abuse its discretion."). Thus, even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator." Fletcher-Merrit, 250 F.3d at 1180.

With respect to any mental or nervous disorders Plaintiff may be suffering, Defendant points to the following relevant plan provision: "**MENTAL OR NERVOUS DISORDERS:** Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period." (AR 21). Plaintiff herself acknowledges the onset of post-traumatic stress, anxiety, panic attacks, and depression from the time of her injury. (Plaintiff's Facts, ¶ 3). Defendant thus asserts Plaintiff has received the maximum amount of benefits for mental or nervous disorders, and cannot recover further for total disability based on such conditions. (Doc. No. 11, PP. 14-15).

In her response to Defendant's Motion for Summary Judgment, Plaintiff asserts that because her mental disorders were caused by her physical injuries, the two cannot be separated for purposes of Plan limitations.[12] (Doc. No. 21, PP. 2-3). She therefore maintains the twenty-four month limitation on benefits does not apply in this case. (Id.). Upon consideration, the Court finds Plaintiff's argument is foreclosed by the Eighth Circuit's decision in Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150 (8th Cir. 1990), cert. denied, 501 U.S. 1238 (1991). In Brewer, the Court stated:

> The cause of a disease is a judgment for experts, while laymen know and understand symptoms. Laymen undoubtedly are aware that some mental illnesses are organically caused while others are not; however, they do not classify illnesses based on their origins. Instead, laypersons are inclined to focus on the symptoms of an illness;

---

[12] It is not entirely clear that Plaintiff's mental disorders were caused by her accident, as the Social Security ALJ noted Plaintiff had a history of anxiety and depression. (AR 555).

- 18 -

illnesses whose primary symptoms are depression, mood swings and unusual behavior are commonly characterized as mental illnesses regardless of their cause.

Id. at 154.  "Thus, considering the cause of a mental disorder is not proper because a layperson classifies the illness by its symptoms, not its causes." Goff v. Standard Ins. Co., 2008 WL 3539663 at *8 (E.D. Ark. Aug. 11, 2008).  See also Stauch v. UNISYS Corp., 24 F.3d 1054, 1056 (8th Cir. 1994) (medical opinions concerning cause of mental illness not material, as court properly focused on symptoms); Eastman v. Prudential Ins. Co., 2008 WL 250597 at *17 (D. Minn. Jan. 29, 2008) (citations omitted) ("[E]ven if [Plaintiff's psychological conditions were of physical origin, the manifestation and symptoms of an illness trigger the applicability of the mental illness benefit limitation.").

In the instant case, as noted above Plaintiff's physical limitations are compatible with sedentary work.  Therefore, while she may in fact be unable to work as a result of her post-traumatic stress, anxiety, panic attacks, and depression, under the policy terms Plaintiff had to be totally disabled based solely on her physical condition in order to continue to receive benefits after the initial twenty-four months.  "It is of no consequence that the physical injuries [Plaintiff] suffered in the accident may have either caused or contributed to [her] mental disorders." Goff, 2008 WL 3539663 at *8.  The Court thus finds Defendant's decision to apply the mental disorder limitation was not an abuse of discretion, and so its Motion for Summary Judgment must be granted.  Id. at *9.  See also Ratliff v. Jefferson Pilot Financial Ins. Co., 489 F.3d 343, 348 (8th Cir. 2007) (internal quotations and citations omitted) ("When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed [and the] discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made."); Wilcox, 2009 WL 910695 at *8 ("[T]he Court should be hesitant to interfere with the administration of an ERISA plan.").

## C.    Social Security Disability Benefits

Plaintiff finally claims Defendant abused its discretion by ignoring the SSA's finding of disability. (Doc. No. 16, PP. 6-12).

> Plaintiff equates the facts of this case to those in *Metropolitan Life Insurance Company v. Glenn*, where the insurance company 'encouraged [the claimant] to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so..., and then ignored the agency's finding in concluding that she could...work.' *Id.* at 2352. In *Glenn*, this fact was important, suggesting procedural unreasonableness, and would have justified giving more weight to the conflict of interest, because the insurer's inconsistent positions were financially advantageous. *Id.* This, taken together with the fact that the insurer had emphasized a certain medical report that favored a denial of benefits, had de-emphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent experts with all of the evidence, led the lower court to set aside the insurer's decision. *Id.*

Downey, 2010 WL 1487227 at *5. Plaintiff thus claims that because Defendant encouraged her to apply for social security benefits, and then benefitted from her subsequent receipt of such benefits, Defendant abused its discretion in denying benefits as had the insurer in Glenn. Id.

Upon consideration, the Court does not agree Defendant acted like the insurer in Glenn, such that its behavior evidences an abuse of discretion. Downey, 2010 WL 1487227 at *6. For example, unlike in Glenn, there is no evidence here that Defendant failed to give all the relevant information to its independent reviewer. Id. Furthermore, "[a]lthough it would be an abuse of discretion had [Defendant] simply seized upon negative information and ignored relevant evidence suggesting disability, the Court does not find that [Defendant] did so here." Id. (citation omitted). Rather, the Court notes Defendant's independent physician and vocational rehabilitation analysts relied on Plaintiff's treating physician's assessments in reaching their conclusions as to her ability to engage in sedentary work.

Most importantly, however, the Court finds Defendant did not simply ignore the SSA's finding, but rather explained that the discrepancy in outcomes was caused by the different standards

applied by Defendant and the SSA. Specifically, as noted above Defendant did not consider Plaintiff's claimed mental impairments in rendering its decision. By way of contrast, after noting that Plaintiff possessed the residual functional capacity to perform sedentary work, subject to certain limitations not relevant here[13], the SSA based its finding of disability in large part on Plaintiff's inability to maintain attention and concentration for extended periods of time due to depression and anxiety, and her inability to tolerate the normal stresses and pressures of routine work activity, both clearly mental or nervous disorders disallowed under the terms of Defendant's policy.[14] (AR 554). Under these circumstances, the Court finds Defendant did not abuse its discretion in deciding to terminate Plaintiff's benefits.[15]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. An appropriate Order of Dismissal will accompany this Memorandum and Order.

---

[13] The ALJ noted Plaintiff was unable to climb stairs, and was limited to standing and walking for no longer than fifteen to twenty minutes at a time, and no longer than two hours total in an eight-hour workday. (AR 554). According to Defendant, the alternative occupations identified by its vocational specialists did not involve these physical activities. (Doc. No. 19, P. 5 n. 1, citing AR 312).

[14] Unlike the Plan at issue here, Social Security does not limit benefits to twenty-four months for disabilities caused by or contributed to by a mental or nervous disorder.

[15] In any event, Defendant was not bound by the decision of the SSA. See Downey, 2010 WL 1487227 at *6, citing Coker v. Metro. Life Ins. Co., 281 F.3d 793, 798 (8th Cir. 2002) ("The determination that [plaintiff] suffers from a pain-based disability under Social Security regulations does not require [defendant] to reach the same conclusion.").

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 14)

is **DENIED**.

Dated this 27th day of September, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE